IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHERWIN V. KOYLE, | **MEMORANDUM DECISION AND** |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| SAND CANYON CORPORATION; WELLS | |
| FARGO BANK NATIONAL ASSOCIATION | Case No. 2:15-CV-00239 |
| | |
| Defendants. | **Magistrate Judge Dustin B. Pead** |

I.     <u>INTRODUCTION</u>

The parties in this case have consented to United States Magistrate Judge Dustin B. Pead

conducting all proceedings in this matter, including entry of final judgment, with appeal to

the United States Court of Appeals for the Tenth Circuit.[1] Currently pending is defendants

Sand Canyon Corporation and Wells Fargo Bank National Association's (collectively "Wells

---

[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Joint Statement of Parties/Consent to Jurisdiction by United
States Magistrate Judge Dustin B. Pead [Dkt. No. 17].

Fargo") motion for summary judgment[2] and plaintiff Sherwin V. Koyle's ("Koyle") cross motion for summary judgment.[3]

This litigation arises out of an attempt by Wells Fargo to foreclosure on Koyle's located at 389 East 1090 North in Orem, Utah, known by legal description "Lot 1, Plat MOUNTAIN GREEN SUBDIVISION" (the "Property").[4] Koyle originally brought his action in the Fourth Judicial District Court for the State of Utah, with Wells Fargo the matter to the United States District Court for the District of Utah.[5] Thereafter, Wells Fargo brought a motion to dismiss[6] and Koyle filed a motion for summary judgment.[7] A hearing was held on September 29, 2015, at which time Wells Fargo agreed to convert its motion to dismiss to a cross motion for summary judgment.[8] During argument, Koyle also confirmed that despite asserting six causes of action,[9] he was only pursuing summary judgment on his fifth claim for expiration of the statute of limitations period.[10] At the hearing's conclusion, the court requested additional briefing and supplemental memorandum were filed by both parties.[11]

---

[2] Defendants' First Motion To Dismiss [Dkt. No. 15]. Converted to Defendants' Motion For Summary Judgment [Dkt. No. 40]

[3] Plaintiff's Motion For Summary Judgment [Dkt. No. 33].

[4] Deed of Trust [Dkt. 15-1].

[5] Notice of Removal from the Fourth District Court of Utah County [Dkt. 2].
[6] Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. 15].

[7] Plaintiff's Motion for Summary Judgment [Dkt. 33].

[8] See Fed. R. Civ. P. 12(d).  Minute Entry [Dkt. 40].
[9] Plaintiff's Complaint [Dkt. No. 2-1].  Asserting causes of action for:  (1) Fraudulent Assignment of Trust Deed; (2) Fraudulent Notice of Default; (3) Improper Foreclosure Proceedings; (4) Demand for Proof of Claim; (5) Expiration of Statute of Limitations To Commence and Action; and (6) Defendant's Cause of Action Against Lender's Policy.

[10] Plaintiff's Complaint, Fifth Cause of Action "Statute of Limitations" [Dkt. No. 2-1].

[11] Order for Additional Briefing [Dkt. 39].

Now, after carefully considering the parties' briefs, arguments and relevant legal authorities, the court rules as follows and **GRANTS** Wells Fargo's motion for summary judgment and **DENIES** Koyle's cross motion for summary judgment.

## II.    FACTUAL BACKGROUND[12]

The following facts are not in dispute for purposes of the motions under consideration:

1. On February 7, 2003, Koyle executed a Deed of Trust[13] secured by a Promissory Note (the "Note")[14] in the amount of $139,400.00.[15]

2. Koyle subsequently failed to make timely payments on the Note, and on October 16, 2003, a Notice of Default and Election to Sell ("Notice Of Default") was recorded against the Property.[16]

3. In part, the Notice Of Default stated:

    Under the provisions of the promissory note and trust deed, the unpaid principal balance is accelerated and now due, together with accruing interest, late charges, costs and trustee's and attorney fees.[17]

4. On March 24, 2004, Koyle filed a Chapter 13 proceeding in the Utah Bankruptcy Court.[18]

---

[12] Except when otherwise noted, the following facts are found in Defendant's converted Motion For Summary Judgment To Dismiss Plaintiff's Complaint [Dkt. No. 15], Plaintiff's Amended Memorandum In Opposition To Defendant's converted Motion For Summary Judgment [Dkt. No. 24], Plaintiff's Cross Motion For Summary Judgment [Dkt. No. 33], and Defendant's Opposition To Plaintiff's Motion For Summary Judgment [Dkt. No. 34].

[13] Deed of Trust [Dkt. No. 15-1].

[14] Adjustable Rate Note [Dkt. No.15-2].

[15] Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment, at 3 [Dkt. No 34].

[16] Notice of Default And Election To Sell [Dkt. No. 23, Exhibit A], [Dkt. No. 33, Exhibit A].

[17] *Id.*

[18] Case Summary ,Case No. 04-24599 [Dkt. No. 23, Exhibit B].

5.   On October 19, 2004, U.S. Bankruptcy Judge Judith A. Boulden signed an Order and Payment Plan as agreed to and signed by the parties. [19] Under the plan, the parties agreed that the bankruptcy court's automatic stay would remain in effect subject to Koyle making specific monthly payments pursuant to the terms of the Note and Trust Deed.[20]

6.   Based upon non-compliance,[21] the court dismissed Koyle's Chapter 13 Bankruptcy proceedings on December  20, 2004 for failure to make payments[22]

7.   On February 17, 2005, Koyle filed a second Chapter 13 bankruptcy.[23]

8.   On July 18, 2005, U.S. Bankruptcy Judge William T. Thurman signed an Order and Payment Plan ("Agreed Order") as agreed to and signed by the parties.[24]  Under the plan, the parties agreed that the bankruptcy court's automatic stay would remain in effect subject to Koyle making specific monthly payments pursuant to the terms of the Note and Trust Deed.[25]

9.   Based upon non-compliance, the court dismissed Koyle's second Chapter 13 bankruptcy proceeding on October 7, 2005.[26]

10.  Subsequently, on September 27, 2011, Wells Fargo filed a "Cancellation of Notice of Default" ("Cancellation") which stated "the undersigned hereby cancels the Notice of Default filed for record October 16, 2003."[27]

---

[19] October 19, 2004 Bankruptcy Court Agreed Order Conditioning Automatic Stay, Case No. 04B-2459 [Dkt. No. 23, Exhibit C].

[20] *Id.*

[21] Trustee's Declaration of Non-Compliance With Order Confirming Chapter 13 Plan [Dkt. No. 23, Exhibit D].

[22] Case Summary, Case No. 04-24599 [Dkt. No. 23, Exhibit B].

[23] Bankruptcy Petition, Case No. 05-22203 [Dkt. No. 23, Exhibit E].

[24] Bankruptcy Court Agreed Order Conditioning Automatic Stay, Case No. 05-222-3 [Dkt. No. 15-20].

[25] Id.

[26] Order Dismissing Chapter 13 Case Following Contested Confirmation Hearing Case No 05T-22203 [Dkt. No. 23, Exhibit G].

11.  Afterwards, on December 19, 2014, Wells Fargo filed a second "Notice of Default and Election to Sell"[28] accelerating collection of the debt, with a trustee sale scheduled for April 20, 2015.

## III.   LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court views "all facts [and evidence] in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart,* 678 F.3d 850, 856 (10th Cir. 2012)(quoting *Grynberg v. Total S.A.,* 538 F.3d 1336, 1346 (10th Cir. 2008)(alterations in the original). A fact dispute is considered "material if it might affect the outcome of the suit under governing law." *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.,* 477 US 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## IV.   ARGUMENTS

Although the facts are not in dispute, the parties vigorously disagree about the significance of the dates and the effect, if any, the actions and agreements of the parties have on the relevant statute of limitations period.

Koyle asserts Wells Fargo is time barred from enforcing the Note and foreclosing the Deed of Trust because the six year statute of limitations period has expired.[29] Koyle

---

[27] Cancellation Of Notice Of Default [Dkt. No. 34-17].

[28] Notice Of Default And Election To Sell [Dkt. No. 15-4].

[29] The parties do not dispute the applicable statute of limitations period is six years under Utah Code Ann. §57-1-34 and Utah Code Ann. §78B-2-309(2), §70A-3-118(1).

UCA § 57-1-34 states:  "The trustee's sale of property under a trust deed shall be made, or an action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the obligation secured by the trust deed."  Pursuant to UCA §78B-2-309, the time "period prescribed by law" for the

contends the limitations period began on October 16, 2003, when the Notice of Default was issued and the underlying debt was accelerated. As a result, the limitations period expired six years later on October 16, 2009, and any attempt to foreclose after that date is barred.

Wells Fargo, on the other hand, argues the limitations period was extended by Koyle's acknowledgement of the debt, stayed under the automatic stay provisions of his Chapter 13 bankruptcy and decelerated pursuant to the Cancellation of the Notice of Default. Accordingly, under Wells Fargo's time line, the election to sell is timely because the limitations period triggered by the initial Notice of Default was extended, decelerated and started running anew on December 19, 2014, when the second Notice of Default was issued. In the alternative, Wells Fargo contends that as beneficiary of the trust, Utah law allows foreclosure on a security interest more than six years after default.

In order to resolve the parties' competing interpretations of relevant dates, the court examines the following issues: (1) Did Koyle acknowledge the debt and in doing so renew the statute of limitations period? (2) Did Koyle's bankruptcy filing toll the statute of limitations period? (3) Is Wells Fargo entitled to unilaterally decelerate the debt? and (4) Assuming the six year statute of limitations period expired, is Wells Fargo still entitled to foreclose on the Deed of Trust?

## 1.   Koyle Renewed The Statute Of Limitations By Acknowledging The Debt During Bankruptcy

Under Utah law, a written acknowledgement of debt or a promise to pay restarts the relevant statute of limitations period on collection of a debt.

---

commencement of an action on a promissory note is six years.  Further, "An action may be brought within six years. . . upon any contract, obligation or liability founded upon an instrument in writing, . . . ."  In addition, ". . . the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates state in the note or, if a due date is accelerated, within six years after the accelerated due date.  UCA §70A-3-118(1)

Utah Code Ann. §78B-2-113(1) states:

> (1)An action for recovery of a debt may be brought within the applicable statute of limitations from the date:
>
>> (a) the debt arose;
>>
>> (b) *a written acknowledgment of the debt or a promise to pay is made by the debtor*, or
>>
>> (c) a payment is made on the debt by the debtor

UCA §78B-2-113 (2015). Under the statute a "bar of the statute of limitations is effective against the debt, where the statute has run, and it is sought to avoid the effect by a new promise or acknowledgment, such promise [to be effective] must be in writing and designed by the party to be bound because it in effect revives or creates a new legal liability which could not otherwise be asserted or established." *McGrath v. Fogarty,* 2015 U.S. Dist. LEXIS 86897, *21 (citing *Bracklein v. Realty Ins. Co.,* 95 Utah 490, 80 P.2d 471, 478 (Utah 1938).

Thus, in order to start the limitations period running anew, a party's written acknowledgment of the debt must be "clear, distinct, direct, unqualified, and [amount to an] intentional admission of a present, subsisting debt on which a party is liable." *Wells Fargo Bank, N.A. v. Temple View Investments,* 2003 UT App 441 ¶9, 82 P.3d 655 (referencing UCA §78-12-44 (2002), *amended by* UCA §78-B-2-113 (Feb. 7, 2008). Such affirmation must be "more than a hint, a reference, or a discussion of an old debt; it must amount to a clear recognition of the claim and liability as presently existing." *Beck v. Dutchman Coalition Mines Co.,* 2d Utah 2d 104, 269 P.2d 867, 870 (1954)(citation omitted).

Here, Koyle acknowledged the debt during his second Chapter 13 bankruptcy resulting in a renewal of the six year statute of limitations period.[30] On July 18, 2005, Koyle signed an

---

[30] While it appears Koyle similarly acknowledged the debt on October 19, 2004, when he signed an "Order and Payment Plan" as part of his initial bankruptcy [Dkt. No. 23, Exhibit C, Case No. 04-24599], the court

"Agreed Order Conditioning the Automatic Stay" ("Agreed Order") and affirmed his debt predicated on the Note and Trust Deed.  Under the terms of that agreement, the parties determined that the bankruptcy's automatic stay provisions would remain in effect in exchange for Koyle's agreement to pay specific sums, including regular monthly and arrearage payments, due under the Note.  In part, the Agreed Order states:

> The debtor shall make all regular monthly mortgage payments due to the Creditor pursuant to the terms of the Note and Trust Deed attached to Creditor's Motion, beginning with the payment due on August 1, 2005.  The amount of each such payment is presently $1,244.78.  The amount is subject to change to reflect escrow requirements and any other adjustments provided by the terms of the Note and Trust Deed.[31]

Koyle argues the Agreed Order was merely a reservation of his right to contest payments in his state court action and does not amount to an acknowledgment of the debt. The court disagrees. The issues in Koyle's state court action are irrelevant to a determination of whether the bankruptcy court order was an acknowledgment of Koyle's liability. Moreover, Koyle fails to provide any evidence that he opposed or rejected the terms of the Agreed Order. *See Albin v. Pearson*, 266 A.D.2d. 487, 487, 698 N.Y.S.2d 732, 732 (1999)(debt not acknowledged and statute of limitations period not extended when debtor rejected bankruptcy plan); *see also* 4 Williston on Contracts § 8:28 (4th ed.) ("… merely acknowledging or admitting the existence of the obligation will generally not remove the bar; but as far as the statute of limitations is concerned, in most jurisdictions any unqualified acknowledgment, so long as it is voluntarily made and is not accompanied with any evidence showing an intention to refuse payment, is the equivalent of a new promise."). Rather, Koyle voluntarily entered into the agreement and committed to make payments as set forth therein.

---

considers the later July 18, 2005, acknowledgment significant for statute of limitations purposes  [Dkt. No. 15-20].

[31] Agreed Order Conditioning Automatic Stay [Dkt. No. 15-20,p. 2].

Koyle voluntarily signed the Agreed Order on July 18, 2005, an act which the court views as a clear, distinct, unequivocal and intentional acknowledgment of the debt and renewal of the six year statute of limitations period.[32]

### 2. Koyle's Bankruptcy Petition Tolled The Statue Of Limitations Period.

Koyle's second Chapter 13 bankruptcy was dismissed on October 7, 2005. Wells Fargo contends that Koyle's bankruptcy tolled the statute of limitations period until six years after the dismissal to October 7, 2011. Koyle disagrees, asserting the statute of limitations period was not tolled during the bankruptcy and the timing provisions of 11 U.S.C. §108(c) takes precedence over the bankruptcy's automatic stay provisions.

The United States Federal Bankruptcy Code provides for an automatic stay of all proceedings against a debtor upon the filing of a bankruptcy petition.

In relevant part, the Bankruptcy Code states:

(a) Except as provided in subsection (b) of this section, a petition filed under [the Bankruptcy Code], operates as a stay, applicable to all entities of---

the commencement or continuation of a judicial, administrative or other action proceeding against the debtor that was or could have been commenced before the commencement of the case [under the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under this title

11 U.S.C. §362(a)(1)(precluding creditors from instituting an action against debtor prior to expiration of stay).

Additionally, Utah's Code provides:

---

[32] *Compare Beck v. Dutchman Coalition Mines*, 2 Utah 2d 104, 108, 269 P.2d 867, 870 (1954) (finding, letter contained clear and definite acknowledgment of debt to re-start statute of limitations and acknowledgment does not require "the amount of the claim be acknowledged, or that the claim be liquidated."); *But see Wells Fargo Bank N.A. v. Temple View Investments*, 2003 UT App 441, ¶ 10; 82 P.3d 655 (concluding letter did not acknowledge existing debt because language of letter reflected a dispute over liability on the note).

The duration of an injunction or statutory prohibition which delays the filing of an action may not be counted as part of the statute of limitations.

UCA §78B-2-112.[33]

In Utah, the federal Bankruptcy Code is interpreted as "work[ing] in tandem" with Utah's Code such that "creditors are precluded from instituting any action detrimental to the bankruptcy estate prior to the termination or expiration of the stay." *Timm v. Dewsnup* , 86 P.3d 699, 2003 UT 47, ¶ 5 (citing *Citicorp Mortgage, Inc. v. Hardy,* 834 P.2d 554, 556 (Utah 1992)(holding statute of limitations period stayed during debtor's bankruptcy proceeding and as a result foreclosure on trust deed property was timely).

Koyle argues that 11 U.S.C. § 108(c) takes precedence over other provisions and does not toll the statute of limitations period but grants a creditor thirty days after an automatic stay expires within which to proceed.  Section 108(c) addresses extensions of time for commencing a civil action unrelated to the bankruptcy proceeding, and provides if a statute of limitations period,

> (c). . . has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. §108(c).

Utah's courts have discussed the interplay 11 U.S.C. §362, 11 U.S.C. §108(c) and Utah Code Ann. §78-12-41, concluding that although §108(c) does not operate in and of itself to

---

[33] As amended February 7, 2008, formerly, Utah Code Ann. §78-12-41 ("When the commencement of an action is stayed by injunction or statutory prohibition the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action.").

stop the statute of limitations period and the bankruptcy stay does not necessarily toll all statute of limitations periods, the provision incorporates the "suspension of deadlines that are expressly provided in other federal or state statutes." *Sittner v. Schriever*, 2001 UT App 99, ¶14. n. 6 (citing *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir. 1993). As a result, §108(c) is read in conjunction with Utah Code Ann. §78-12-41, "allowing the entire time period remaining on the claim to begin running when the automatic stay is lifted." *Citicorp Mortgage, Inc. v. Hardy,* 834 P.2d 554, 556 (1992)("Utah Code Ann. §78-12-41. . . is wholly consistent with like provisions of the Bankruptcy Code.").[34]

In turn, Utah's stay of the limitations period during the pendency of bankruptcy proceedings supports public policy considerations surrounding the potential "for abusive filings of bankruptcy proceedings to defeat legitimate deficiency actions on statute of limitations grounds." *Id; see also Butner v. United States,* 440 U.S. 48, 55 (internal quotation and citation omitted)("Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy").

In this matter, Wells Fargo was barred from foreclosing on the property during Koyle's bankruptcy proceedings, and under the relevant statutes the foreclosure action was stayed until dismissal of Koyle's bankruptcy on October 7, 2005. Accordingly, Koyle's acknowledgment of the debt in conjunction with tolling under the bankruptcy court's automatic stay provision extended the statute of limitations period to six years after the bankruptcy was discharged to October 7, 2011.

---

[34] *See Johnson v. First Nat'l. Bank*, 719 F.2d 270, 273 (8th Cir. 1983) ("in the absence of any conflict between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights.).

**3.   Wells Fargo's Cancellation Of  The Notice of Default Decelerated The Debt And Canceled The Notice of Default.**

Koyle's next argument rests on his claim that the statute of limitations period has expired because Wells Fargo cannot unilaterally revoke its acceleration of the debt pursuant to the October 16, 2003, Notice Of Default by filing the September 27, 2011, Cancellation of Notice Of Default.[35] As reinforcement for his claim, Koyle relies heavily upon *Deutsche Bank Trust Co. Ams. v. Beauvais,* where the Florida District Court concluded that once the debt was accelerated, absent "a contractual reinstatement, modification by the parties or an adjudication on the merits, the accelerated debt was not 'decelerated' by an involuntary dismissal without prejudice." 2014 Fla App. LEXIS 20422 (Fla. Dist. Ct. App. 3d Dist. Dec. 17, 2014). The conclusion in *Beauvais*, however, is "contrary to the overwhelming weight of authority" finding that "even where a mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee's foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure actions. . . so long as they are based on separate defaults." *Stern v Bank of Am. Corp.,*112 F. Supp. 3d 1297, 1300 (M.D. Fla. 2015).[36]

In Utah, borrowers have three months within which to cure defaults on their loans after a notice of default has been filed by paying the entire amount due to that point under the

---

[35] Cancellation Of Notice Of Default [Dkt. No. 34-17].

[36]  Numerous Florida courts have declined to follow *Beauvais.  E.g. Soloneko v. Georgia Notes 18, LLC,* 2016 Fla. App. LEXIS 257, 41 Fla. L. Weekly D 1114 (Fla. 4th DCA Jan. 6, 2016); *Nationstar Mortg. LLC v. Brown,* 175 So. 3d 833 (Fla. 1st DCA 2015); *accord In re Gonzalez,* 2016 WL 360607 (S.D. Fla. Jan. 13, 2016); *In re Anthony,* 534 B.R. 834, 838 (M.D. Fla. 2015); *Summerlin Asset Mgmt. V Trust v. Jackson,* 2015 U.S. Dist. LEXIS 86445, 2015 WL 4065372 (S.D. Fla. July 2, 2015); *Stern v. Bank of Am. Corp.,* 112 F. Supp. 3d 1297 (M.D. Fla. 2015); *LNB-017-13, LLC v. HSBC Bank USA,* 96 F. Supp. 3d 1358 (S. D. Fla. 2015). Of note, *Beauvais* has been set for rehearing *en banc* by the Third District. *See Deitsche Bank Trust Co. Ams. v. Beauvais,* 2015 Fla. App. LEXIS 13630 (Fla. Dist. Ct. App. 3rd Dist. Aug. 3, 2015).

terms of the trust deed.  In the event the default is cured, the statute requires the trust deed be reinstated and the trustee execute a cancellation of the notice of default.

Utah Code Ann. §57-1-31 states in relevant part,

>   (1) Whenever all or a portion of the principal sum of any obligation secured by a trust deed has, prior to the maturity date fixed in the obligation, become due... the trustor... at any time within three months of the filing for record of notice of default under the trust deed, if the power of sale is to be exercised, may pay to the beneficiary or the beneficiary's successor in interest the entire amount then due under the terms of the trust deed... other than that portion of the principal as would not then be due had no default occurred, and thereby cure the existing default. After the beneficiary or beneficiary's successor in interest has been paid and the default cured, the obligation and trust deed shall be reinstated as if no acceleration had occurred.

>   (2) If the default is cured and the trust deed reinstated in the manner provided in Subsection (1),. . . the trustee shall execute, acknowledge, and deliver a cancellation of the record notice of default under the trust deed. . . .

Utah Code Ann. §57-1-31. In addition to curing a default by paying the entire amount due under a trust deed, a default may also be cured if the parties "mutually agree to settle a default and treat it as cured for a lesser amount." *Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 241 n. 2 (Utah Ct.App.1991). "In the presence of such a mutual agreement, the requirements of Section 57-1-31 that the trust deed be reinstated and that the trustee execute a cancellation of the notice of default would still apply." *Markey v. BAC Home Loan Servicing, LP,* 2011 WL 2357890, at *3. Use of the term "reinstatement" means "the parties are returned to their former status as if the default had never occurred." *Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 241 n. 3 (Utah Ct. App. 1991). After reinstatement, the borrower may resume regular monthly payments, and the beneficiary must begin new foreclosure proceedings if the borrower defaults again. *Id.*

In the present case, the parties agree Koyle did not cure the debt, and that no agreement was reached by the parties. Yet Koyle argues that Wells Fargo cannot unilaterally

"decelerate" the debt by filing a Cancellation, since deceleration can only occur only when "the default has been cured."[37] While the plain language of UCA §57-1-31 is silent on the effects of unilateral cancellation, case law establishes that a beneficiary or trustee can unilaterally cancel a default under circumstances such as here where the default has not been cured and no mutual agreement has been reached by the parties. *See Markey v. BAC Home Loan Servicing, LP,* 2011 U.S. Dist. LEXIS 61793 (D. Utah June 9, 2011).

Specifically,

> [t]here may be instances in which a beneficiary or trustee of a loan wishes to cancel a notice of default even though the default has not been cured and no mutual agreement has been reached between the parties. ***Nothing in the language of the statute requires the default to be treated as cured if the notice of default is cancelled, and the court is unwilling to read such a requirement into the statute.*** A beneficiary or a trustee of a trust deed may cancel a notice of default, for whatever reason, without being forced to treat the default as cured. The statute states that it only applies when the entire amount due under the trust deed is paid or when the parties mutually agree to treat the default as cured.

*Markey,* at *9 (emphasis added).

Further, Section 57-1-31 is "devoid of any language to indicate what steps, if any, a trustee must take to ensure that the default has been cured and, notably provides no penalty for a trustee who records a notice of cancellation where the default has not been cured." *RJW Media, Inc. v. CIT Grp./Consumer Fin., Inc.,* 2008 UT App 476, ¶ 19, 202 P.3d 291, 294-95 (concluding statute does not articulate a duty to verify that a claimed default has actually been cured and does not establish a fixed standard of care). Once a cancellation deems the notice withdrawn it is no longer valid.

Based thereon, Koyle's claim that Wells Fargo could not unilaterally decelerate the debt fails. A beneficiary or a trustee of a trust deed may cancel a notice of default without curing the debt or an agreement with the borrower as to how to treat the default. As a result, Wells

---

[37] Corrected Plaintiff's Supplemental Brief [Dkt. No. 33, p. 3].

Fargo's decision to issue the Cancellation of Notice Of Default dated September 27, 2011, was well within its statutory abilities and obligations, as the statute imposes no other additional duties on Wells Fargo to decelerate the debt even if the debt has not been cured as described in Utah Code Ann. §57-1-31. The effect of the cancellation was that the acceleration was voided and the statute of limitations was tolled until the filing of a new Notice of Default. Here, once the September 27, 2011, Cancellation of the Notice of Default was issued the October 16, 2003, Notice of Default was no longer valid; the Notice of Default accelerated the debt and the acceleration was withdrawn by issuance and recording of the cancellation. Further, as discussed above Koyle's acknowledgment of debt and bankruptcy tolling provisions extended the statute of limitations period on the October 16, 2003, Notice of Default to October 7, 2011. As a result, the September 27, 2011, Cancellation was within the statute of limitations period and a new statute of limitations period began running upon issuance of the December 19, 2014, Notice of Default.

### 4.   Even If The Six Year Statute of Limitations Period Expired Wells Fargo May Still Foreclose On The Deed of Trust

Finally, assuming, arguendo, that cancellation of the notice of default did not unwind the acceleration and the six year statute of limitations had period expired, Wells Fargo could still foreclose on the deed of trust and Koyle is not entitled to any relief quieting title to the property in his name.

In *DiMeo v. Nupetco Associates, LLC,* obligors Vern and Elenor Strand ("Obligors") failed to make payment on a promissory note and after their deaths, DiMeo, as their as personal representative sought to quiet title in the real property securing the note and arguing that foreclosure was barred due to expiration of the statute of limitations period. 2013 UT App 188, ¶9; 309 P.3d 251, 254. Occasional payments on the note were made by another obligor, Michael Strand ("Strand"). As to the Obligors, the court agreed that the lender's "ability to

obtain a deficiency judgment against [debtors. . .had] long since expired due to their longstanding failure to make any payments due under the note" *Id.* at ¶ 8. However, in so ruling the court also concluded that the trust deed was still enforceable and could be foreclosed since "the running of the statute of limitations only prevents [the lender] from imposing liability on [Obligors] personally for amounts still due after the security is sold and the proceeds applied to the debt." *Id.* at ¶9.

Koyle attempts to distinguish the case by arguing, unlike here, in *DiMeo* periodic payments were made on the note by a third party Strand. While Koyle's factual distinction is accurate, the court considers it a distinction without a difference since the Strand's payments did not factor into the court's conclusion that, as to Obligors, the lender could still foreclose on the trust deed. *See Christensen v. Am. Heritage Title Agency, Inc.,* 2016 UT App 36, ¶24 (characterizing issue in *DiMeo* as "whether the expiration of the statute of limitations against two deceased obligors on the note prevented the trust deed from validly securing the obligation due under the note."); *see generally Kamas Sec. Co. v. Taylor,* 226 P.2d 111, 117 (Utah 1950)("[t]he effect of the statute of limitations is to bar the remedy but not to discharge the obligation.").

Further, public policy supports a similar conclusion in this case such as here where, as evidenced by the record, Koyle has frustrated the legal system and stymied foreclosure, despite his non-payment on the Note, through the pursuit of multiple court actions, bankruptcies, and other legal petitions.[38] Thus, even if the statute of limitations to enforce the note has expired, Wells Fargo is still entitled to foreclose on the deed.

---

[38] Defendant's Supplemental Brief In Support Of Converted Motion For Summary Judgment, pg. 17-13, Chart listing Koyle's filings [Dkt. No. 42].

## V.  <u>CONCLUSION</u>

The court concludes the statute of limitations is not a bar to enforcement of the debt. Koyle's written acknowledgment of the debt, bankruptcy stay and deceleration of the debt occurred within the six year statute of limitations period.  Wells Fargo issued its Cancellation of Notice of Debt within the six year statute of limitations period and as a result the parties were returned to their former status. As such, Wells Fargo was within its ability to file a second "Notice of Default and Election to Sell" on December 19, 2015.

In the alternative assuming the six year statute of limitations period expired, Wells Fargo is still entitled to foreclose on the deed of trust even if it cannot collect on the Note.  Utah law provides for foreclosure on a security interest more than six years after default.

## VI.  <u>ORDER</u>

For the reasons set forth above, the **GRANTS** Wells Fargo's motion for summary judgment, and **DENIES** Koyle's cross motion for summary judgment.

Dated this 8th day of March , 2016.          By the Court:

Dustin B. Pead
United States Magistrate Judge